INTERNATIONAL BUSINESS MACHINES CORPORATION, Appellant,

v.

Lou K. PEARSALL et vir, Appellees.

No. 16994.

Court of Civil Appeals of Texas.

Dallas.

Dec. 8, 1967.

Rehearing Denied Jan. 5, 1968.

James A. Williams, of Bailey, Williams, Weber & Allums, Dallas, for appellant. Burt Berry, Dallas, for intervenor.

Gerald W. Moss and Ben Warder, Jr., of Carter, Gallagher, Jones & Magee, Dallas, for appellees.

DIXON, Chief Justice.

Appellant International Business Machines Corporation, hereinafter called IBM, has appealed from a judgment of $28,740 awarded as damages to appellees Lou K. Pearsall and husband, Richard A. Pearsall, because of injuries sustained by Mrs. Pearsall when she fell over a tool kit left in an aisle by an employee of IBM.

On December 13, 1962 Harold Wayne King, a service man employed by IBM, went to the offices of United States Gypsum Company, hereinafter called Gypsum Company, to repair a typewriter. Finding the platen, the roller on the typewriter, was not repairable, he ordered a new platen to be sent out.

On December 14, 1962 King returned to the Gypsum Company offices and found that the delivery service man had already installed the new platen. However, some adjustments were necessary so King went to work to finish the repair job on the typewriter. He placed his tool kit in a main aisle flush against the side of the desk on which the typewriter was situated.

King's instructions from his employer were to place his tool kit if possible under-

neath the desk in the well or space provided for the secretary's feet while the secretary sat at the desk. If that could not be done his instructions were that the kit should be placed in some aisle not much traveled, not a main aisle.

The tool kit when closed measures about 13 by 16 inches with the top 7 inches from the floor; when open the top of the lid is about 16 inches from the floor. The kit looks very much like a small suitcase.

King testified that on the occasion in question he did not place his tool kit in the well underneath the desk because a secretary, Mrs. Boyd, was sitting at the desk. So he placed the kit in an aisle, the main aisle, flush against the side of the desk while he worked on the typewriter from the opposite side of the desk from Mrs. Boyd.

About the time King finished his task Mrs. Boyd left her desk. King then walked around to the side vacated by Mrs. Boyd to make a final inspection. But he did not move the tool kit. He let it remain in the main aisle though there was a lesser aisle available to the rear of the desk.

Mrs. Pearsall was an employee of Gypsum Company. She was chief teletype operator and handler of all communications, both teletype messages and mail. She sorted the messages and mail for delivery to the proper departments. Every hour she made the rounds of all the desks to deliver messages and mail and to pick up outgoing mail.

On the morning of December 14, 1962 Mrs. Pearsall had completed a round of the desks. The desk where the accident occurred was the last pickup station on the round. She approached the desk in an aisle where King had been standing while working on the typewriter. However, he had left that position and gone to the other side of the desk before Mrs. Pearsall came along. She picked up the mail and was rounding the corner of the desk into the main aisle to go to her office when her foot struck the tool kit, causing her to fall and

to sustain serious injuries. The tool kit lay with its back flush against the desk about 6 inches from the corner. Mrs. Pearsall was carrying a stack of mail on her left arm. Her right hand was placed on top of the stack.

Mrs. Pearsall knew that waste baskets were sometimes placed in less traveled aisles back of the places where the secretaries sat at their desks and she was accustomed to be alert to avoid such obstructions in those aisles. But obstructions were rarely placed in the main aisle and then only temporarily.

There was some difference in the testimony as to whether the kit was opened or closed when Mrs. Pearsall fell over it. King said it was open. Mrs. Pearsall was under the impression that it was closed at that time because it was closed when she first saw it after the fall and she did not hear any click that the top would have made as it closed after she hit it. We consider the question immaterial. The lid of the kit if open would have been flush against the side of the desk and it would have been the last part of the kit to be seen as Mrs. Pearsall rounded the corner of the desk into the main aisle.

■ A jury made findings to the effect that (1) the failure of King to remove the kit from the place where he originally placed it was negligence and (2) such negligence was a proximate cause of the accident; (3) Mrs. Pearsall did not fail to keep a proper lookout, (4) nor should she have known of the presence of the service kit before she fell.

Appellees filed a motion for judgment on the verdict. Appellant filed motions for judgment *non obstante veredicto* and for the court to disregard certain named answers of the jury. The court overruled appellant's motions and sustained appellees' motion.

In its brief appellant lists twenty-one points of error. Appellant charges that there was no evidence, or there was insuf-

ficient evidence, to support the jury's findings in favor of appellees; and that the jury's finding that it was negligence for King not to remove the kit from the place where he originally put it placed a greater burden, duty or responsibility upon appellant than is allowed or permitted by law. We think there is ample evidence to support the jury's findings.

The most serious contention of appellant is that the obstruction (that is, the kit) in the aisle was open and obvious, therefore as a matter of law no duty arose to require appellant to remove the object. In support of this view appellant cites a lecture by Justice Greenhill, as reproduced in 28 Texas Bar Journal 21 (January 1965); also, among others, the following cases: Medallion Stores, Inc. v. Eidt, 405 S.W.2d 417 (Tex.Civ.App., Texarkana 1966, writ ref'd, n. r. e.); Lederman v. Cunningham, 283 S.W.2d 108 (Tex.Civ.App., Beaumont 1955, no writ); A. C. Burton Co., Inc. v. Stasny, 223 S.W.2d 310 (Tex.Civ.App., Galveston 1949, writ ref'd); Houston Nat. Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374 (1948); Fergeson v. National Bank of Commerce, 174 S.W.2d 1015 (Tex.Civ.App., Galveston 1943, no writ).

■ We do not agree with appellant. The "no duty" doctrine applies only to occupiers of premises. The doctrine is not applicable here because appellant cannot be considered an occupier of premises since appellant did not have exclusive possession of the area in which its employee, King, was working. Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup.1963); Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963).

■ As to the "volenti" doctrine, it is an affirmative defense, which appellant neither pleaded, nor did appellant request that appropriate issues be submitted. Moreover, there is no evidence that Mrs. Pearsall knew of or appreciated the danger offered by the existence of the tool kit lying in wait for her around the corner of the desk. Halepeska v. Callihan Interests, Inc., supra.

Appellant further contends that Mrs. Pearsall was guilty of contributory negligence as a matter of law. As we have already said, we believe that there was ample evidence to support the jury's verdict exonerating Mrs. Pearsall of contributory negligence. Certainly we cannot hold that the facts of this case bring it within those situations where the act of a plaintiff is "so opposed to the dictates of common prudence that we can say, without hestitation or doubt, that no careful person would have committed it." Blinks v. Southland Hotel, 149 Tex. 139, 229 S.W.2d 357, 360 (1950). See also Harvey v. Seale, 362 S.W.2d 310, 313 (Tex.Sup.1962); Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 622 (1950); Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625 (1941).

■ In two cross points appellees complain because the court, though it sustained appellees' motion for judgment based on the jury's verdict, refused to include the sum of $1,200 as reasonable and necessary hospital bills in the judgment of $28,740.

In its motion asking the court to disregard the jury's answers to certain issues appellant did not attack the jury's finding of $1,200 as reasonable and necessary hospital bills. The court on its own motion refused to include such sum in the amount of the judgment in favor of Mrs. Pearsall on the ground that there was no evidence to support the finding. Appellees duly objected and excepted to the action of the court.

We are of the opinion that the cross points properly presented the question on this appeal. English v. Century Indemnity Co., 342 S.W.2d 366, 370 (Tex.Civ.App., San Antonio 1961, no writ); Maloney v. Strain, 410 S.W.2d 650, 653 (Tex.Civ.App., Eastland 1966, no writ).

We are also of the opinion that in the absence of a motion by appellant the trial court was without authority to disregard the jury's answer on the court's own motion. Beal v. Great American Indemnity Co., 322 S.W.2d 399, 402 (Tex.Civ.App., Texarkana 1959, no writ); Edmiston v. Texas & N. O. R. Co., 135 Tex. 67, 138 S.W.2d 526 (1940); Christopherson v. Whittlesey, 197 S.W.2d 384 (Tex.Civ.App., Beaumont 1946, writ ref'd n. r. e.); Insurors Indemnity & Ins. Co. v. Associated Indemnity Corp. et al, 139 Tex. 286, 162 S.W.2d 666, 670 (1942); Hines v. Parks, 128 Tex. 289, 96 S.W.2d 970 (1936); 4 McDonald's "Texas Civil Practice," Sec. 17.32, page 1415; Rules 300 and 301, Vernon's Texas Rules of Civil Procedure.

The judgment of the trial court will be modified so as to include the sum of $1,200 as reasonable and necessary hospital expenses, making a total recovery in favor of appellees of $29,940.

As so modified the judgment is affirmed.